NOTICE
Decision filed 12/18/25. The text of this decision may be changed or corrected prior to the filing of a Petition for Rehearing or the disposition of the same.

2025 IL App (5th) 240922-U

NO. 5-24-0922

IN THE

APPELLATE COURT OF ILLINOIS

FIFTH DISTRICT

NOTICE
This order was filed under Supreme Court Rule 23 and is not precedent except in the limited circumstances allowed under Rule 23(e)(1).

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) | Appeal from the |
| | ) | Circuit Court of |
| Plaintiff-Appellee, | ) | Macon County. |
| | ) | |
| v. | ) | No. 23-CF-1659 |
| | ) | |
| HEATHER SHANK, | ) | Honorable |
| | ) | Shane Mendenhall, |
| Defendant-Appellant. | ) | Judge, presiding. |

PRESIDING JUSTICE CATES delivered the judgment of the court.
Justices Moore and Hackett concurred in the judgment.

**ORDER**

¶ 1    *Held*:   The trial court did not err when it refused to give the defendant's tendered jury instruction, and the trial court did not abuse its discretion when it denied defendant's motion for judgment notwithstanding the verdict. The trial court's judgment is affirmed.

¶ 2    Following a jury trial, the defendant, Heather Shank, was convicted of aggravated battery and was sentenced to 30 months' probation and 120 days in the Macon County jail. The sentence of incarceration was stayed pending completion of any recommended treatment. The defendant appeals, arguing that the trial court abused its discretion when it denied the defendant's tendered jury instruction No. 2 which was not an Illinois Pattern Instruction (IPI) and failed to grant the defendant a new trial. The defendant additionally argues that the trial court abused its discretion when it denied the defendant's motion for a judgment notwithstanding the verdict. The State

1

responds that the trial court did not abuse its discretion when it refused the defendant's tendered jury instruction. For the following reasons, we affirm the judgment of the trial court.

¶ 3                                    I. BACKGROUND

¶ 4      On November 3, 2023, Decatur City police officers responded to the residence of the defendant after they were dispatched for a report of a dispute between neighbors. Prior to the arrival of the officers on scene, a dispute had arisen between the defendant and Demario Latson, a worker who was cleaning up a property near the defendant's home. The initial confrontation began when the defendant approached Latson and began recording him. A scuffle ensued between the defendant and Latson. The defendant's son, Elijah Alverez, witnessed the scuffle and began to record the altercation on his phone. When police arrived on scene, the defendant told the officers that she had approached Latson to see what was going on because no one was supposed to be at the house that Latson was working on. Latson informed the police that he was permitted to work on the home by the landlord. During the defendant's explanation of her version of events, Latson and the defendant's husband began arguing. They were standing across the street from the defendant's driveway. Decatur police officers were forced to separate both Latson and the defendant's husband.

¶ 5      Officer Anna Oldham stayed with the defendant while the other officers were defusing the dispute between the defendant's husband and Latson. The defendant and her children were standing in the defendant's driveway when the defendant became agitated and began yelling across the street at her husband. The defendant proceeded to ask Oldham if she was being detained or under arrest. Oldham did not respond to the defendant's questioning. As the defendant attempted to walk from her driveway into the back door of her house, Oldham, who was standing nearby, stuck her arms straight out to stop the defendant from going into her home. A struggle ensued.

2

Another officer nearby, Sergeant Rolfs, became aware of the struggle, and rushed towards Oldham and the defendant. Oldham pushed the defendant with a forearm to the defendant's chest, until Rolfs arrived which gave Oldham an opportunity to place handcuffs on the defendant. Oldham was wearing a body camera, but the content was not available to show the altercation between Oldham and the defendant. Rolfs also had a body camera which captured his role in the altercation.

¶ 6    On November 6, 2023, the defendant was charged by information with one count of aggravated battery under section 12-3.05(d)(4) of the Criminal Code of 2012 (720 ILCS 5/12-3.05(d)(4) (West 2022)). The information alleged that on or about November 3, 2023, the defendant knowingly made contact of an insulting and provoking manner with Officer Oldham knowing that Oldham was a peace officer engaged in her official duties. The trial court found the defendant eligible for pretrial release and issued a release order.

¶ 7    A jury trial was held on June 12, 2024, and Oldham was the first officer called by the State. During her testimony, Oldham stated that she had been wearing her body camera during her shift. She stated that it was "partially" working, but the footage regarding this incident became corrupted during the upload process. This process took place after Oldham reported to the station at the end of her shift. She stated that the corruption resulted in the loss of the body camera footage. During Oldham's recollection of the events, she testified that she had been advised that there was going to be an arrest, so she was standing next to the defendant to "contain" her. At this point, the defendant and Oldham were standing in the defendant's driveway, next to a parked minivan. The defendant was agitated and was cursing at Oldham. When the defendant attempted to go into her house through the back door, Oldham stuck her arms straight out to prevent the defendant from leaving. Oldham testified that the defendant then, "pushed me into the minivan that was parked in the driveway." Two other officers on scene ran up to assist. Oldham was able to push the defendant

3

up against the house with her forearm across the defendant's chest until the defendant could be handcuffed. On cross-examination, Oldham was again asked about the body camera footage. She stated that she had other footage from earlier in her shift, but the remainder of the day, beginning with this incident, failed to upload. During further questioning by defense counsel, Oldham stated she did not remember whether she informed the defendant that she was being detained or under arrest but did inform the defendant that she was not allowed to go inside.

¶ 8    Sergeant Rolfs testified next. During Rolfs' testimony, his body camera footage was played for the jury. Rolfs was around 25 to 30 feet from Oldham and the defendant when he started toward Oldham to assist her. Rolfs testified that as he came around the house, he saw Oldham was bent over the minivan. The defendant was pushing away from Oldham, trying to "create distance" between the two of them. Rolfs recalled that he verbally indicated that the defendant was "pushing Oldham." Once Rolfs got to the defendant and Oldham, he was able to assist with getting the defendant into custody. On cross-examination, Rolfs admitted he did not witness the beginning of the dispute between Oldham and the defendant. Rolfs noted that as he came into view of the altercation, he observed ongoing physical contact between the defendant and Oldham which caused Oldham to be continually knocked off balance by the defendant. Following Rolfs' testimony and the introduction of his body camera footage into evidence, the State rested.

¶ 9    The defense called Autumn Woolsey, a neighbor of the defendant. During her testimony, Woolsey stated that when she arrived home from work, she went over to the defendant's home. The defendant was outside in her driveway, crying. Once police arrived, Woolsey went into her own side yard that was located next to the defendant's driveway. Woolsey continued to watch the situation as it unfolded. Woolsey testified that she heard the defendant specifically ask the police officers if she was under arrest or being detained. Woolsey did not hear any officers tell the

4

defendant that she was under arrest or being detained. Woolsey testified that she heard the defendant say, "if I'm not being arrested or detained, I'm going to go into my house and have a cigarette." As the defendant was walking towards the house, Woolsey saw Oldham grab the defendant, push her against the house, and pull the defendant onto Oldham's body. According to Woolsey, she did not ever see the defendant push a police officer. After a brief cross-examination by the State about the location of Woolsey's yard in relation to the defendant's driveway, the defense rested.

¶ 10    Prior to closing arguments and outside the presence of the jury, the trial court went through the jury instructions tendered by the State and defense counsel. The State objected to the defendant's tendered jury instruction number 2. This instruction read, "If you find the State has allowed to be destroyed or lost any evidence whose content or quality is an issue, you may infer that the true fact is against the State's interest." The State argued that this instruction was a non-IPI instruction and further argued that the body camera footage was not destroyed or lost but that there was a technical glitch causing it to "not work." Defense counsel argued that the instruction was proper because the recording did exist at one time, but the recording became corrupted during the officer's upload. Therefore, defense counsel argued that this footage was lost. The trial court denied the defendant's proposed jury instruction. The State and defense counsel gave closing arguments, and the jury was instructed on the law.

¶ 11    Following jury deliberations, the defendant was found guilty of aggravated battery. On June 17, 2024, defense counsel filed a motion for judgment notwithstanding the verdict which also included a motion for a new trial. In defendant's motion, defense counsel argued that the evidence failed to prove the defendant guilty beyond a reasonable doubt. In addition, defense counsel argued

5

that based on *People v. Danielly*, 274 Ill. App. 3d 358 (1995), the trial court erred when it refused to give the defendant's tendered jury instruction No. 2, and that a new trial was warranted.

¶ 12   On August 8, 2024, the trial court held a hearing on the defendant's motions and sentencing. During the hearing, defense counsel argued that the trial court erred when it failed to give the defendant's proposed instruction No. 2 and that defendant was entitled to a new trial. Furthermore, defense counsel relied on *Danielly*, 274 Ill. App. 3d 358, to support her argument that the body camera footage was missing evidence that entitled the defendant to the instruction that counsel had tendered. Defense counsel asked the trial court for a new trial, but in the alternative, defense counsel argued that there was insufficient evidence to find the defendant guilty beyond a reasonable doubt. The State argued that the special concurrence in *Danielly* was correct in that there was not a rule that required a negative inference instruction when evidence was missing. In addition, the State argued that the jury was aware of the missing body camera footage and was permitted to draw any inference from the missing footage, including whether or not to believe the officer's explanation. Therefore, the State asked that the trial court deny the defendant's motions. After considering the arguments of counsel, the trial court denied the defendant's motion for judgment notwithstanding the verdict, finding there was sufficient evidence to prove the defendant's guilt beyond a reasonable doubt. The trial court also denied the defendant's motion for a new trial, finding that the trial court did not err in refusing to give defendant's jury instruction No. 2. The trial court relied on *Arizona v. Youngblood*, 488 U.S. 51 (1988). Specifically, the trial court found that to create a due process violation, a defendant must show bad faith by police when evidence is missing. Additionally, the trial court found that the testimony from Oldham indicated that the video may not have ever existed because the body camera malfunctioned. Therefore, the

6

trial court found that the video could not have been lost. The defendant's motion for a new trial was denied.

¶ 13    Thereafter, the trial court moved on to sentencing and imposed a sentence of 30 months' probation and ordered that the defendant undergo a substance abuse/mental health evaluation within 90 days of her sentencing date. In addition, the court sentenced the defendant to 120 days in the Macon County jail but stayed enforcement of this sentence pending the completion of the defendant's substance abuse/mental health treatment. This appeal follows.

¶ 14                              II. ANALYSIS

¶ 15    On appeal the defendant argues that she is entitled to a new trial because the trial court abused its discretion when it refused to give defendant's non-IPI tendered jury instruction No. 2. The defendant also argues that the trial court abused its discretion when it denied the defendant's motion for judgment notwithstanding the verdict. The State argues that the trial court did not abuse its discretion in refusing to give the defendant's non-IPI jury instruction. Furthermore, the State argues that the essence of the instruction was already addressed by the criminal IPI instructions given to the jury.

¶ 16    The trial court's decision on whether to give a non-IPI jury instruction rests within the sound discretion of the court. *People v. Thompkins*, 2013 IL 127805, ¶ 42. Whether a trial court has abused its discretion will depend on whether the instruction is accurate, simple, brief, impartial, and a nonargumentative statement of the law. *Thompkins*, 2013 IL 127805, ¶ 42. Whether a jury instruction correctly states the law is reviewed *de novo*. *Thompkins*, 2013 IL 127805, ¶ 42. Therefore, we review the non-IPI instruction *de novo* and we review the trial court's decision on whether to give the tendered jury instruction for an abuse of discretion.

¶ 17    In the case at bar, the trial court refused to give the defendant's tendered jury instruction that read: "If you find the State has allowed to be destroyed or lost any evidence whose content or quality is an issue, you may infer that the true fact is against the State's interest." The defendant argues that there was evidence to support giving this instruction based upon the missing body cam footage. We disagree. This instruction creates an inference that the State was to be held responsible for any evidence that could have been destroyed or lost. However, the testimony from Oldham is unclear as to whether the body camera footage ever existed. In fact, Oldham was asked by the State, "And it was during this upload that something went wrong, and you basically lost the video; is that right?" Oldham responded, "Evidently." Oldham's response is not an admission that the body cam footage ever existed. The trial court commented at the motion hearing that, "Officer Oldham testified that her body cam malfunctioned and no video ever existed, *i.e.*, there never was a video that was lost or destroyed because no video ever existed." Thus, according to the record, the evidentiary issues surrounding the body camera footage are unclear. Therefore, the trial court correctly denied the non-IPI instruction, as it did not comply with the proof at trial. As noted previously, a non-IPI instruction must, among other things, be accurate. Under these circumstances, a non-IPI instruction would be improper. Therefore, the trial court did not abuse its discretion in refusing to give the defendant's tendered jury instruction.

¶ 18    In addition, the defendant argues that a more appropriate civil IPI instruction should have been given. Specifically, the defendant now claims that IPI Civil 5.01 instruction, which pertains to the failure to produce evidence and witnesses, should have been given *sua sponte* by the trial court. See Illinois Pattern Jury Instructions, Civil, No. 5.01. The defendant did not tender any such instruction at trial. "The burden of preparing jury instructions is on the parties, and a party may not raise the failure to give an instruction on appeal unless he shall have tendered it." *People v.*

*Moore*, 229 Ill. App. 3d 66, 75 (1992). Therefore, this issue is waived. *Moore*, 229 Ill. App. 3d at 75.

¶ 19 Finally, the defendant argues that the trial court abused its discretion when it denied the defendant's motion notwithstanding the verdict. When presented with a challenge to the sufficiency of the evidence, a reviewing court will view the evidence in a light most favorable to the State and determine if any rational trier of fact could have found the elements beyond a reasonable doubt. *People v. Wallace*, 2020 IL App (1st) 172388, ¶ 26. The reviewing court will not set aside a factual determination unless "the evidence is so unreasonable, improbable, or unsatisfactory" that guilt is not proven beyond a reasonable doubt. (Internal quotation marks omitted.) *Wallace*, 2020 IL App (1st) 172388, ¶ 26. Here, the trial court found there was sufficient evidence to prove the offense beyond a reasonable doubt. We agree with the trial court's findings, as the record contains sufficient facts to support the defendant's conviction beyond a reasonable doubt.

¶ 20                                          III. CONCLUSION

¶ 21 For the foregoing reasons, we affirm judgment of the trial court.

¶ 22 Affirmed.